Counsel, you may proceed. Good morning, Your Honors. May it please the Court, my name is Todd Gregorian of Pendleton West, and I'm here on behalf of Plaintiff Appellant Charles Christoferson. Subject to the panel's questions this morning, I intend to focus on his Fourth Amendment claim. Mr. Christoferson pled a violation of his Fourth Amendment rights that was not subject to qualified immunity, and even if he did not, the district court was wrong not to explain the deficiencies in the claim and give him a chance to amend. We concede the properly conducted prison strip searches are not unconstitutional. However, it is not constitutional to conduct a public strip search absent a justification for it. Your client was pro se below? Correct. And you were appointed on appeal to represent him? That's correct, Your Honor. When the judge dismissed without leave to amend, understanding it was pro se, did he request the opportunity to amend? I don't believe he requested the opportunity. He did file an objection to the magistrate's reports, but as I understand it, as a pro se, he's not required to request leave unless his complaint affirmatively forecloses his claims, he should be granted leave to amend. Thank you. So the search at issue here was extraordinary as it involved a large group of inmates in a public area in full view of many staff members and other inmates. It was done in that manner notwithstanding the fact that facilities were available in the area to do any necessary searching in a more private setting. Christofferson's complaint was dismissed without leave to amend based on the magistrate's analysis of the complaint in a different action brought by a different inmate surrounding the same facts. Can you give me the name? I know I read it in the record. The name of the other inmate? The other inmate was Hoover. Hoover. In conducting the analysis in this way, it led the magistrate to resolve certain fact questions against Mr. Christofferson. There are three important ones, I think, for purposes of his Fourth Amendment claim. The first is that the magistrate determined that the manner in which the search was conducted afforded some measure of privacy. That's directly contrary to Mr. Christofferson's allegation that the search was conducted in the foyer, which was visible to not only the inmates being searched and the staff conducting the search, but the rest of the staff in the housing unit and the rest of the inmates. So is your argument that there's a material question of fact with regard to how public or private the search was? Yes, I'd say that is our position, and that is relevant to the balancing test that Bell directs the court to engage in. And what did Mr. Christofferson rely upon in order to contest the fact or establish that there were other facilities available? So his allegation, there are two key allegations on this point, Your Honor. One is that under normal circumstances, these searches are conducted in a special area or a private cell, which implies that those areas are available within the unit. Secondly, in his objections to the report and recommendations, he alleges that there were four private television rooms and several administrative offices available adjacent to the foyer in which the search could have been conducted. What occasion of the search? Well, Your Honor, I don't think we have that in the record. We have some bases from which we might infer that the search took place. However, crediting Mr. Christofferson's allegations at this stage, as we must, his allegation is that it was initiated as a penal measure in order to humiliate the inmates. I was just wondering if there's anything in the record that would show some exigent circumstances that required the search to be conducted in the area it was. And we believe there are not. The potential objective bases for initiating the search that are revealed in the record are the prison policy of conducting searches when inmates are returning from a work detail and, second, the altercation that occurred prior to the search. With respect to the policy, the circumstance of a work detail returning is well within the advanced contemplation of the prison staff. There's no exigent circumstances that would require that search to be conducted in public, at least none in the record. Are they normally done randomly, or do they do it every time the inmates come back from a work detail? Do we know? I don't believe we know. With respect to the second justification, the altercation, Mr. Christofferson again has specific allegations in his complaint that must be credited that would support a conclusion that the search was unreasonable in manner. And those are that the altercation took place three days before the search, that it was friendly in nature, that it was so inconsequential that the two inmates That seems to me to be an oxymoron. Is there such thing as a friendly altercation? I'd like to hear the definition of that one. I guess it depends how you interact with your friends. In a prison. But isn't it true that when they put them in the chute, they put them in the same cell together? That's correct. And that is alleged in the first amended complaint. Is it in essence what you want to lead to amend? So we believe that the first amended complaint as drafted states a Fourth Amendment complaint. But certainly if the court disagrees, what we think Mr. Christofferson is entitled to is a chance to amend each of the claims. You're not prepared to stand on that first amendment, that first complaint, are you? With respect to the I understand you think it's sufficient. But do you still want the opportunity to amend? I think in terms of the direct relief we'd seek from this court would be to reverse and remand with instructions that Mr. Christofferson be allowed to replete his complaint. Returning to what the magistrate did below, the other two factual findings he engaged in are that the purpose of the search was to address the altercation, and finally that the search could not have been conducted effectively in the rooms adjacent to the foyer. The result of the magistrate's analysis is somewhat extraordinary in that there are no other cases that we could find that dismiss claims arising out of a group strip search at the pleading stage. Your Honors, if I may, I'd like to reserve the remainder of my time. Of course. Let's hear from the Governor. Good morning, Your Honors. Good morning. May it please the Court. My name is Adrienne Brown. I'm an assistant United States attorney in the District of Oregon, and I represent both the interests of the United States as well as the individual officers named in this complaint. I'd like to address some of the questions that the Court was asking my opponent. The first question is, did he request the opportunity to amend? And even though he may not have actually requested it, he did submit a first amended complaint, and that is in the record at ER 48. So we do know what he actually would have alleged in an amended complaint. Also, as far as – That was done by him as a pro se, right? Yes, it was done as him as a pro se, and now that he has the benefit of counsel, we do not actually have any additional facts that counsel has not provided what else this pro se prisoner would have alleged. Are they required to do that? No, not required, but he had an opportunity to provide. We do not know what else he would have done, and it's speculative at this point as far as what he would have done differently from his first amended complaint. He had an opportunity to provide the Court some information in his brief, and we don't know anything further than what's in his brief, which is, again, speculative as to what exactly the facts are that he would have alleged. You know, I've only been on this Court 20 years, and I suspect this issue of allowance to amend has come up several hundred times. I cannot think of a single instance in which an attorney on appeal said, oh, by the way, here's the complaint we would file if we were given the opportunity to amend. Yes, Your Honor. What we know, though, is that any opportunity to amend would be futile. We know that the actual allegation. It's a good way to find that out, isn't it? Yes, Your Honor. As far as remand, certainly. But we do have the benefit at this point in time of not only what he previously did assert, but we also know that what the guards did at this point was actually constitutional. They actually were allowed to have qualified immunity at this stage, and any additional facts that this plaintiff would precede would not actually defeat I'm sorry. Are you arguing that the guards individually would be entitled to qualified immunity, but the claim could proceed against the Bureau of Prisons or that the whole case goes away? The whole case goes away. There actually is not a case against the Bureau of Prisons here. The case is a Bivens case against just the individual guards. And in this situation, we actually have no constitutional violation, and that is why, Your Honor, any amendment would be futile. So even if he doesn't have an obligation, as you say, to submit additional facts at this point, what we know is any additional facts would be futile. And the court actually did make this finding because even though the behavior may have been inappropriate, as the district court found, it does not equate to unconstitutionality. What do you do with our in-bank opinion, and I'm forgetting the name of the case, but it involved Sheriff Joe Arropaio and the strip searches conducted in the Maricopa County Jail by female guards of male inmates in view of many other inmates and other correctional officers. Yes, Your Honor. You have a different set of facts here, which is distinguishable from those cases that talk about female inmates or humiliating behavior. In this situation, what you have is you do have a group strip search, but it was actually instituted by an emergency procedure. It was an institutional recall that initiated this procedure. So all the Unicorn Corps workers that this plaintiff was involved in was coming back at the same time, and that is a fact we have from the plaintiff's complaint. We also know that the other inmates that came back individually were searched in their cells. So there was a reason why these inmates as a group coming back from Unicorp were searched as a group. Now, as the plaintiff has provided us, there were about 20 guards there, and there were about 36 inmates. And what we know is that those inmates were then divided up into groups to afford some privacy, and there was actually no harm done. There was no touching. It was purely a visual search, and it was done for the purposes of safety and efficiency, which is something that is left to the discrepancy of the Bureau of Prisons to decide what is going to be the most safe and efficient manner to conduct this search since we have all these inmates coming back at once. The sheriff that Judge Tallman referred to has work details that involve women inmates. This is a hypothetical question. So are you telling us that if women were brought back from a work detail and strip searched in the presence of men that that would not be a problem? It would depend on the circumstances. I mean, you can't say there's any. What circumstances? Well, certainly if, again, if you have what are the provisions of privacy that are being afforded. A strip search of a woman in the presence of men would not be a problem. Well, Your Honor, it depends on, again, who the men are. Are you talking about the man that's actually doing the search? Are you talking about inmates? Or who else are you talking about? I mean, I do think each situation has to rest on its individual facts. I cannot say there may be no circumstance whatsoever. Each Bureau of Prisons officer at the time, and the question is, what did that officer know at the time of the search? What was reasonable for that officer to do at the time of the search? And there cannot be such a prescriptive measure that no strip search, no group strip search is ever reasonable. But if that's the case, then how can we declare qualified immunity? Because I'm not sure that we have enough facts yet to know what the unique circumstances were here that may or may not establish a constitutional violation. We actually do have enough facts here, Your Honor. The plaintiff has acknowledged that, indeed, there was a scuffle between inmates, and it wasn't. It was actually racial, racially based tension, and that's from the plaintiff. We also know that there was an institutional recall, and all these inmates that the plaintiff was a part of were coming back from a work detail where, indeed, contraband could have been brought into the housing unit. And we know from Nunez that that is a legitimate, pedagogical interest to search inmates coming back from a work detail. Here you have, based on both the scuffle that happened before and the work detail, you have a security concern of having a lot of inmates standing around waiting to be searched. So here the guards did exercise their discretion to conduct a mass search to get it done like that. And, therefore, you wouldn't have inmates standing around with the possibility of getting in a fight. Now, could it have been done a different way? Sure. But does that mean that the way it was done here was unconstitutional? No. And that is what we have here, is we have the reliance upon not only the plaintiff's information about what happened, what caused the search, but we also have information as to why the guards would have done it this way, which shows that there was not a constitutional violation, nor was there any clearly established law that would have told these guards that there was a reason why what they were doing was unconstitutional. If the Court has no further questions. I have nothing else. Thank you very much. I'd like to address just a couple of points that opposing counsel made. And the first is that Mr. Christofferson has already been given leave to amend, by virtue of the first amended complaint he submitted. Wait a second. That's not quite right. I think he lodged it, and apparently the magistrate judge looked at it, but then denied his motion to file the amended complaint on a determination that to do so would be futile because it still didn't allege a constitutional violation. Isn't that the procedural posture? That is correct. That is the procedural posture. The point I wish to make about that is that, as a pro se litigant, he's entitled to a statement of reasons for the deficiencies in the operative complaint before he amends. Well, if the Court says, I've looked at it, and my determination is that even if I allowed it, it would still be futile because you haven't alleged a constitutional violation, what more does the district court have to say at that point? With respect to the... To its conclusion that amendment would be futile. Nothing, if that conclusion is in fact correct. Yeah, I mean, we basically look at the record, and then we try to determine on the state of this evidence, you know, is there a plausible constitutional violation that could be alleged here or not? And if we decide there is, then I guess we would reverse and remand to order the district court to permit an amended complaint to be filed. As I understood your answer to Judge Hawkins' question, it would be a different amended complaint than the one that he drafted, although I haven't yet heard what more you would add to what he had alleged in the putative amended complaint. That's fair enough, Your Honor, and I did not conduct that investigation with the client for practical reasons. The only point I'd wish to add was that the law requires that he be given a statement of deficiencies. He was not. I believe I've lost my time. Well, thank you very much, and counsel, I do want to thank you and your firm for accepting the pro bono appointment. The court very much appreciates it, and you did a good job arguing the case. Thank you. All right. The case just argued is submitted.
judges: Whyte, Hawkins, Tallman